UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| OCEANA, INC., )<br>      Plaintiff, )<br>  v. )<br>GARY F. LOCKE, *et al.,* )<br>      Defendants. )<br>) | Civil Action No. 08-1881 (PLF/AK) |

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is Plaintiff's Motion to Compel Completion of the Record ("Motion") [16]; Federal Defendants' opposition to the Motion ("Opposition") [17] and the Plaintiff's reply to the Opposition ("Reply") [21]. In the instant case, Plaintiff Oceana, Inc. ("Plaintiff" or "Oceana") moves to compel the inclusion into the Administrative Record of seventeen documents that have been withheld by Federal Defendants National Marine Fisheries Service; Gary Locke, Secretary of the United States Department of Commerce; and the National Oceanic and Atmospheric Administration (hereinafter, collectively "NMFS" or the "Agency"). Nine documents are withheld by NMFS pursuant to the confidentiality provisions of the Magnuson-Stevens Fishery and Conservation Act ("MSA"). Eight documents are withheld based on NMFS's assertion of deliberative process privilege and of those eight, NMFS has also asserted attorney-client privilege and work-product protection regarding four documents.

On August 7, 2009, this Court issued a Minute Order directing the Defendants to provide a copy of the documents that are being withheld on grounds of privilege or protection, so that this Court could conduct an *in camera* review of those documents. On August 12, 2009, Defendants provided the contested documents for an *in camera* review and the Court has now completed its review, applying the legal principles set forth herein. This Court's privilege rulings are explained herein and are also noted in the accompanying Order.

I. <u>Background</u>[1]

A. <u>Requirements of the Endangered Species Act</u>

The underlying civil case involves NMFS's authorization of a sea scallop fishery under the Atlantic Sea Scallop Fishery Management Plan, developed pursuant to the Magnuson Act by the New England Fishery Management Council. (Opposition at 6-7; *see* 50 C.F.R. §§648.50-648.63.)[2] Under Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. §1536(a)(2), a federal agency must, in consultation with either the NMFS or the United States Fish and Wildlife Service ("FWS"), insure that "any action authorized, funded, or carried out by such agency" is unlikely to jeopardize the continued existence of an endangered or threatened species or result in the "destruction or adverse modification" of the designated "critical habitat" of the species. *See* 16 U.S.C.§§ 1536(a)(2). ESA Section 7 and the implementing regulations thereto set out a "detailed consultation process for determining the biological impacts of a proposed activity." (Opposition at 2-3, referencing 16 U.S.C. §1536; 50 C.F.R. Part 402.)

An agency proposing an action must first determine whether the action "may affect" listed species or critical habitat. 50 C.F.R. §402.14. If an affirmative determination is made, the action agency [herein NMFS] must pursue consultation (informal or formal, as defined by the ESA's implementing reglutations) with FWS or NMFS, depending on the species. (Opposition at 3.) As part of the formal consultation, NMFS issues a "Biological Opinion" ("BiOp") detailing its biological conclusions as to how the proposed action will affect the species at issue, including

---

[1] Much of the information contained in this Section I is borrowed from the "Facts and Proceedings" section of Defendants' Opposition.

[2] The Magnuson -Stevens Act establishes a comprehensive system for the "conservation and management" of domestic marine fisheries. 16 U.S.C. §1801(b)(1).

a conclusion as to whether the proposed action is likely to jeopardize the continued existence of a listed species or result in destruction or adverse modification of critical habitat.  (Opposition at 3, referencing 16 U.S.C. §1536(b)(3)(A).)  The jeopardy analysis synthesizes the effect of the action, in the action area, upon the status of the species as a whole.  (Opposition at 3-4, referencing 50 C.F.R. §402.02.)  If the action results in the incidental "taking" of members of the species, NMFS provides an "incidental take statement" ("ITS") along with the BiOp.  (Oppostion at 4, *see* 16 U.S.C. §§1536(b)(4)(c)(i)-(iii).)  The ITS discusses the impact of the incidental taking on the species and sets forth reasonable and prudent measures ("RPMs") that NMFS considers "necessary or appropriate to minimize such impact." (Opposition at 4, citing 6 U.S.C. §1536(b)(4)(C)(ii).)  ESA regulations provide that RPMs in an incidental take statement, and the terms and conditions implementing them, "cannot alter the basic design, location, scope, duration, or timing of the action and may involve only minor changes." (Opposition at 4, citing 50 C.F.R. §402.14(i)(2).)

## B. Biological Opinion

NMFS engaged in intra-agency consultations concerning the effects of its fishery authorization upon four Endangered Species Act ("ESA")-listed species of sea turtles, and on March 14, 2008, NMFS issued its BiOp regarding such effects.  (Opposition at 6.)[3]  In its BiOp, NMFS concluded that continued authorization of the scallop fishery "would not appreciably reduce the likelihood of survival or recovery of Atlantic loggerheads" (Opposition at 8; *see* BiOp

---

[3] In its BiOp, NMFS addressed four species of sea turtles - loggerhead, leatherback, Kemp's ridley, and green sea turtles - and "concluded that authorization of the Atlantic sea scallop fishery would not jeopardize the continued existence" of any of these species.  (Opposition at 7; *see* BiOp at 100.)  Plaintiff's Motion focuses on loggerhead turtles.

at 89) nor would it "jeopardize the continued existence of the species." (*Id.*)  NMFS did however determine that "take" would result and accordingly, it issued an incidental take statement in the BiOp.  (Opposition at 8, *see* BiOp at 100-104.)  To minimize the amount of take, NMFS "put in place five [reasonable and prudent measures ("RPMs")] and five terms and conditions to implement the RPMs, to guide continued management of the Atlantic scallop fishery."  (Opposition at 8; *see* BiOp at 101-03.)

## II. Legal Standard

The appropriate standard for review of final agency decisions under the Magnuson-Stevens Act is contained in the Administrative Procedures Act, 5 U.S.C. §706.  NMFS's BiOp must be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.§706(2)(A).  This standard of review is "narrow" and requires only that the agency "examine the relevant data and articulate a satisfactory explanation for its action." *FCC v. Fox Television Stations, Inc*., 129 S. Ct.1800, 1804 (2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Section 706 directs a court reviewing an agency decision to "review 'the whole record or those parts of it cited by a party.'" *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting 5 U.S.C. §706); *Pacific Shores Subdivision, California Water District v. United States Army Corps of Engineers*, 448 F.Supp.2d 1, 4 (D.D.C. 2006).  Review of the "whole record" under this Section "is to be based on the full administrative record that was

before the [agency decisionmakers] at the time [they] made [their] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The "whole record" has been interpreted to include documents and materials directly and indirectly considered by the agency. *Pacific Shores*, 448 F.Supp.2d at 4.

The "focal point for judicial review [of agency action] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Rather, the court is charged with "apply[ing] the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 599 (D.C. Cir. 2007).

An agency's administrative record is presumed to be properly designated. *See Sara Lee Corp. v. American Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008) (citing *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1329 (D.C. Cir. 1984)). Plaintiff bears the burden of "identify[ing] reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the [administrative] record." *Pacific Shores*, 448 F. Supp.2d at 6.

Motions to supplement administrative records are only granted in exceptional cases.[4]

---

[4] Plaintiff captions this Motion as a motion to "compel completion" of the record but it is in fact a motion to supplement the record because it seeks disclosure of documents withheld from the record. *Colorado Wild Horse & Burro Coal. v. Kempthorne*, 571 F. Supp.2d 71, 74 (D.D.C. 2008).

*Fund for Animals v. Williams,* 391 F.Supp.2d 191, 197 (D.D.C. 2005).  Supplementation of the administrative record is not allowed unless the moving party demonstrates "unusual circumstances" justifying a departure from the rule that judicial review is based on a review of the agency's record.  *Am. Wildlands*, 530 F.3d at 1002 (quoting *Tex. Rural Legal Aid, Inc. v. Legal Services Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)).  This Circuit has recognized such "unusual circumstances" in three instances: 1) where the agency "deliberately or negligently excluded documents" that may have been adverse to its decision; 2) where the district court "needed to supplement the record with background information" to determine whether the agency considered all relevant factors; or 3) where the agency has "frustrate[d] judicial review" by failing to explain its decision.  *Am. Wildlands*, *id.* (citations and internal quotation marks omitted.)

### III. Analysis

Plaintiff Oceana challenges the Agency's withholding of three groups of documents: 1) nine observer logs [Privilege Log Documents Nos. 1-9] that are being withheld pursuant to the confidentiality provision of the Magnuson-Stevens Fishery Conservation and Management Act; 2) eight documents being withheld under a claim of deliberative process privilege [Privilege Log Documents Nos. 10-17]; and 3) documents and redacted portions thereof that are being withheld under a claim of attorney-client and attorney work product privileges [Privilege Log Document 12 and the redacted portion of Privilege Log Documents Nos. 15-17.]

#### A. Documents withheld pursuant to the Magnuson-Stevens Act

NMFS deploys fishery observers to collect catch and bycatch data from United States commercial fishing and processing vessels.  "Bycatch" are the living species caught

unintentionally by fishing gear, including loggerhead turtles, which can be swept into a scallop dredge bag, where they may be injured or killed by rocks and other debris. Turtles may also be caught within the superstructure of the gear or pinned between the gear and the fishing vessel. *See* BiOp at 65-68. Privilege Log Documents Nos. 1-9 consist of one page "observer logs" completed by observers on assigned scallop vessels, recorded between 1997 and 1999. NMFS claims that these logs are not subject to disclosure based upon the language in the Magnuson-Stevens Act.[5]

Section 402(b)(2) of the Magnuson-Stevens Conservation and Management Act provides that, subject to certain exceptions, "any observer information shall be confidential and shall not be disclosed." 16 U.S.C. §1881a(b)(2). *See* Kurkul Decl. ¶6 ("To release the entire observer form, or any portion of it, would release information collected by an observer aboard a fishing vessel and thereby threaten to dissuade observers from recording their observations of protected species interactions during fishing operations.") NMFS indicates that it has not "identif[ied] any applicable exemption" applicable to the observer logs and thus is "required by law" to withhold such logs. (Motion at 11.) Oceana argues that one of two exceptions applies in this case to allow the agency to disclose such information; i.e., either disclosure may be accomplished by means of a "court order," 16 U.S.C. §1881a(b)(1)(D), or such information may be disclosed "in any aggregate or summary form which does not directly disclose the identity or business of any person who submits such information." 16 U.S.C. §1881a(b)(3).

---

[5]In her Declaration, Patricia A. Kurkul, Northeast Regional Administrator of NMFS, indicates that "[o]bservers play a critical role in gathering objective information on protected species interactions with scallop operations and have been an important means of reliable and effective data gathering." (Kurkul Decl. ¶6.)

NMFS asserts that it has already "released the relevant information from the observer logs in aggregate or summary form" with the effect that Oceana's request for information in aggregate form is redundant.[6] (Opposition at 16); see Kurkul Declaration, ¶7 ("Portions of the released record containing relevant information from these forms include the 2008 Scallop BiOp (AR Doc 318 at 16819, 16821, 16823, 16829, 16831) and the Murray bycatch reports (AR Docs 205-209)"). Oceana fails to rebut NMFS's statement that a summary of the observer data is already in the Administrative Record, instead insisting that "[s]ince the observer logs are not privileged, are part of the record, and . . . their release in redacted form would cause no harm, the Opposition Brief's claim, even if it were true, would not be relevant." (Reply at 11.)

Oceana's assertion ignores the language of the Magnuson-Peters Act, which mandates the confidentiality and non-disclosure of observer data, subject to limited exceptions, as well as the purpose of the Act. See Kurkul Decl. ¶6 ("Releasing observer information, . . ., would threaten to undermine the quality of information available for use in the Opinion's analysis of effects of scallop fishing operations on protected species. Release of the entire observer form, or any portion of it, would also release observer information on vessel operations, which includes their interactions with protected species. Releasing information on vessel operations . . . , which Congress intended to be confidential, threatens to undermine the agency's ability to have observers on fishing vessels as they conduct normal fishing operations and to perform data-

---

[6] In the instant case, the Agency has indicated that relevant information from these observer logs was considered in aggregate form. The Agency should not be obligated to produce information other than that which was directly or indirectly considered, which it has done by including in the record a summary of observer data collected.

gathering functions in that context that are critical to the conservation of protected species and to fishery management.")

Plaintiff alternatively argues that information on the observer logs may be disclosed when "required by court order," relying on *Laxalt v. McClatchey*, 809 F. 2d 885, 888 (D.C. Cir. 1987), where the Circuit Court vacated the District Court's refusal to issue an order permitting discovery of Federal Bureau of Investigation files that were subject to the Privacy Act. That case was remanded for the district court to apply the discovery standards and procedures set forth in the Federal Rules of Civil Procedure. The Court of Appeals noted that "[i]t is well-settled in this circuit that general statutory bans on publication do not bar limited disclosure in judicial proceedings, including court-supervised discovery." 809 F.2d at 889 (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343-44 (D.C. Cir. 1984); *Freeman v. Seligson*, 405 F.2d 1326, 1348-52 (D.C. Cir. 1968.)

*Laxalt* is however factually inapposite to the instant case because that case involved discovery requests made during the course of a civil proceeding, applying the Federal Rules of Civil Procedure (Rules 26 & 45). In contrast, this case involves an action for review of an administrative record, applying the standard of review set forth in the A.P.A., and discovery is not typically permitted in A.P.A. cases because a court's review of an agency's decision is confined to the administrative record. *See, e.g., Community for Creative Non-Violence v. Lujan*, 908 F. 2d 992, 997 (D.C. Cir. 1990); *Edison Elec. Inst. v. OSHA*, 849 F.2d 611, 617-18 (D.C. Cir. 1988). "The administrative record includes all materials compiled by the agency . . . that were before the agency at the time the decision was made." *James Madison Ltd. v. Ludwig*, 82 F. 3d 1085, 1095 (D.C. Cir. 1996) (internal quotation marks and citations omitted); *see Citizens to*

*Preserve Overton Park v. Volpe*, 401 U.S. 402 , 419-20 (1971). While taking discovery outside the administrative record is permitted in some limited circumstances, including where there is a "strong showing of bad faith or improper behavior" or where discovery provides "the only possibility for effective judicial review and when there have been no contemporaneous administrative findings[,]" those circumstances have not been alleged to exist in this case. *Community for Creative Non-Violence*, 908 F.2d at 997 (citation omitted.)

This Court has reviewed Privilege Log Documents Nos. 1-9, consisting of observer logs, which are confidential and should not be disclosed consistent with the clear language of the Magnuson-Stevens Act. Despite the fact that the Agency has indicated [by citing to the Record] that a summary of the relevant information from these logs has already been included in the Administrative Record, Plaintiff contends that this Court should issue an order requiring disclosure of the observer logs. Plaintiff fails however to proffer any justification for the issuance of such court order [e.g., a strong showing of bad faith], which would persuade this Court to bypass the confidentiality and non-disclosure provisions of the Magnuson-Stevens Act. Accordingly, Privilege Log Documents Nos.1-9 are properly withheld by the Agency.

### B. Documents Withheld pursuant to the Deliberative Process Privilege

A document must satisfy two criteria to be exempt from disclosure as a deliberative documents: it must be both "pre-decisional" and "deliberative,"*Judicial Watch, Inc. v. Department of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005). *See also In re Sealed Case*, 121 F. 3d 729, 737 (D. C. Cir. 1997).[7]  Documents are deliberative and predecisional if they "make

---

[7]Predecisional means "prepared in order to assist an agency decisionmaker in arriving at his decision." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (citations omitted.) Deliberative means that the document "reflects the give-and-take of the consultative

recommendations for policy change" or "reflect internal deliberations on the advisability of any particular course of action." *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 569 F.3d 434, 444 (D.C. Cir. 2009.)  The privilege is "centrally concerned with protecting the process by which *policy* is formulated." *Petroleum Information Corp. v. United States Department of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (emphasis in original).  "[T]he kind and scope of discretion involved must be of such significance that disclosure genuinely could be thought likely to diminish the candor of agency deliberations in the future." *Id.* at 1436, n.8.

Predecisional and deliberative documents "are not part of the administrative record to begin with," so they "do not need to be logged as withheld from the administrative record." *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F.Supp.2d 23, 27 (D.D.C. June 23, 2009).  *See also Blue Ocean Inst. v. Gutierrez*, 503 F. Supp.2d 366, 372 (D.D.C. 2007) (denying motion to compel completion of administrative record, finding that deliberative documents "are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious," nor must the agency assert deliberative process privilege.)  In the instant case, however, while the Agency asserts that it had "no obligation to identify deliberative documents or to submit a privilege log" NMFS did "identif[y] some deliberative documents in its privilege log [Items Nos. 10-17] because the documents were

---

process." *Id.*   A deliberative document is one that is: "(1) antecedent to the adoption of an agency policy and (2) a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Trans Union LLC v. Federal Trade Comm'n*, 141 F.Supp.2d 62, 69 (D.D.C. 2001) (internal quotation marks and citation omitted.) *See also Department of the Interior v. Klamath Water Users Protective Ass'n*, 532  U.S. 1, 8 (2001) (finding that the "deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated") (internal quotation marks and citation omitted).

considered by the decisionmaker." (Opposition at 18.)

The documents withheld by NMFS under the deliberative process privilege consist of "three documents that reflect internal discussion regarding the biological opinion, three documents regarding development of a population viability analysis, and one document that is a draft biological opinion." (*Id.*)

Plaintiff insists that these documents are not deliberative process privileged because they may be classified as factual rather than opinion. (Motion at 9.)[8] In support of its distinction between factual and opinion documents, Oceana relies upon *Petroleum Information Corp. v. United States Dept. of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (contrasting documents that are "technical" and "objective" in nature with documents that contain "subjective, personal thought.") *See also Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc) ("[t]he fact/opinion distinction 'offers a quick, clear and predictable rule of decision' for most cases.") The *Wolfe* court, 839 F.2d at 774, cautioned however that "courts must be careful not to become victims of their own semantics" (quoting *Mead Data Center*, 566 F.2d at 256) because "[i]n some circumstances, even material that could be characterized as 'factual' would so expose the deliberate process that it must be covered by the privilege." (citing *Mead, id.*)

The Agency disputes that the alleged deliberative process privileged documents are purely factual, arguing instead that "[e]ach document reflects a give-and-take among NMFS officials and staff, and thus reflect[s] internal deliberations on the course of action to take regarding (1) the

---

[8]Because Oceana has not seen the documents that are being withheld, Oceana's characterization of the documents as "factual" rests on the description of such documents and their relationship with documents that are part of the Administrative Record.

analysis of effects of the scallop fishery on sea turtles, (2) the development of the PVA model, and (3) the conclusions in the biological opinion." (Opposition at 19.) The Agency further notes that these documents were all created prior to the issuance of a final Biological Opinion.

This Court has reviewed Privilege Log Documents Nos. 10-17 and finds that Documents Nos. 10, 11, 13 and 14 are deliberative process privileged and need not be produced by the Agency.[9] These documents were all created prior to the adoption of the March 2008 BiOp; they are working drafts subject to comments and revisions on policy matters [Documents Nos. 13 and part of 14] and/or they express advisory opinions and make recommendations regarding Agency policy matters [Documents Nos. 10, 11, and part of 14]. These documents were prepared to assist the Agency decisionmaker and they reflect Agency internal deliberations.

### C. Attorney-Client Privilege and Work Product Protection

The purpose of the attorney-client privilege is to promote "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Com. v. United States*, 449 U.S. 383, 389 (1981). *See also Coastal States Gas v. Dept. Of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (noting that the purpose of the privilege is to "assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys.") The privilege extends to an attorney's written communications to the client to ensure against inadvertent disclosure of such confidential information. *Id.* The privilege protects "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services" as well as "communications from attorneys to their clients if the communications rest on

---

[9]Documents 12 and 15-17 are better addressed in Section C. herein.

confidential information obtained from the client." *Electronic Privacy Info. Ctr. v. Department of Justice*, 584 F. Supp. 2d 65, 79 (D.D.C. 2008) (quotations and citations omitted.)  The party asserting the privilege bears the burden of demonstrating with sufficient certainty that existence of the requisite elements supporting such privilege.  *Attorney General v. Covington & Burling*, 430 F. Supp. 1117, 1122 (D.D.C. 1977).

The work-product doctrine "provides a working attorney with a 'zone of privacy' with which to think, plan, weigh facts and evidence, candidly evaluate a client's base, and prepare legal theories."  *Coastal States Gas*, 617 F.2d at 864.  This doctrine provides immunity from discovery for written materials that are prepared by a lawyer in anticipation of litigation.  *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc), *disapproved on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981).  Protection under the work-product doctrine extends to "documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."  *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992).  The lawyer need only have a reasonable subjective and objective belief that litigation is a real possibility.  *Nesse v. Pittman*, 202 F.R.D. 344, 349 (D.D.C. 2001) (citing *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 967 (D.C. Cir. 1999)).  If the party seeking work product protection establishes that the doctrine applies, the burden shifts to the moving party to make a showing of extraordinary justification.  Fed. R. Civ. P. 26(b)(3); *In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982).

This Court has reviewed Privilege Log Documents Nos. 12 and 15-17 and confirmed that these documents involve an exchange of confidential communications between an attorney and client [the Agency].  These documents reflect the Agency's confidential communications from the

Agency to its attorney, to secure legal advice, and the attorney's responses to the Agency, providing legal opinions and analyses relating to confidential information conveyed by the Agency. Privilege Log Documents Nos. 12, and 15-17 may thus be withheld pursuant to the attorney-client privilege.[10]


**DATED: October 8, 2009**              _____/s/_____
                                        **ALAN KAY**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[10] Because the documents are attorney-client privileged, the Court need not determine applicability of work product protection.