UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OCEANA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PENNY PRITZKER, ) | |
| United States Secretary of Commerce, et al., ) | Civil Action No. 08-1881 (PLF) |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| FISHERIES SURVIVAL FUND ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

        This case involves a challenge to a Biological Opinion issued by the National Marine Fisheries Service ("NMFS"), in which NMFS determined that the operation of the Atlantic Sea Scallop Fishery would not jeopardize the continued existence of the Northwest Atlantic Distinct Population Segment of loggerhead sea turtles. In December of 2014, the Court granted in part and denied in part motions for summary judgment filed by NMFS, plaintiff Oceana, Inc., and defendant-intervenor Fisheries Survival Fund. Oceana, Inc. v. Pritzker, 75 F. Supp. 3d 469 (D.D.C. 2014). In that Opinion, the Court concluded that NMFS had not sufficiently explained its methods for monitoring the number of interactions between loggerheads and fishing gear, and the Court remanded the matter so that the agency could more thoroughly explain its choices, or, if unable to do so, reach different conclusions. Id. at 494-99.

NMFS now contends that it has completed its task upon remand by offering a more thorough explanation of its monitoring methods.  See NMFS' Notice of Completion of Remand [Dkt. No. 113].  The agency has submitted a revised Incidental Take Statement ("ITS") — the section of the Biological Opinion that sets forth those methods — which, NMFS maintains, addresses the Court's concerns and satisfies the legal standard under the Administrative Procedure Act.  See Revised Incidental Take Statement ("Revised ITS") [Dkt. No. 113-1].  Oceana has filed a response in which it argues that NMFS still has failed to demonstrate that its monitoring methods are not arbitrary and capricious.  See Oceana Response [Dkt. No. 116].  Oceana therefore maintains that a second remand is required.  Id. at 9.

I.

This matter is presently before the Court on NMFS' motion to strike an expert declaration submitted by Oceana as an exhibit to its response memorandum, as well as those portions of Oceana's memorandum that rely on the declaration.  See NMFS Mot. to Strike [Dkt. No. 119].  The declarant, George Weaver, Ph.D., is a professional statistician.  See Declaration of George Weaver ("Weaver Dec.") (July 9, 2015) [Dkt. No. 116-1] ¶¶ 1-12.  Oceana relies on Dr. Weaver's evaluation of a scatterplot that NMFS has presented in its Revised ITS.  The agency's scatterplot purports to demonstrate a strong positive linear relationship between two variables:  the number of hours that vessels are out at sea using dredge fishing gear ("dredge hours"), and the number of loggerhead sea turtles struck by that gear (loggerhead "takes").  See Revised ITS at 10-11; SAR 13374-75.  The agency has proposed using dredge hours as a surrogate measure of loggerhead takes, making the link between these two phenomena critical to the reasonableness of this monitoring approach.  See Oceana, Inc. v. Pritzker, 75 F. Supp. 3d at

497 (concluding that remand was required because the original ITS "simply fail[ed] to explain how 252,323 dredge hours equals 161 [loggerhead] takes").[1]

According to Dr. Weaver, however, the Revised ITS and the accompanying Supplemental Administrative Record "do not provide enough or the right kind of information to determine whether dredge hours have a positive linear relationship to estimated sea turtle takes." Weaver Dec. ¶ 15. NMFS argues that Dr. Weaver's declaration must be stricken and that Oceana should be ordered to file a new response memorandum that does not rely on the declaration. NMFS Mot. to Strike at 7. Oceana opposes NMFS' motion, maintaining that it is appropriate in these circumstances to consider the extra-record declaration and Oceana's arguments made in reliance upon it. See Oceana Opp. to Mot. to Strike [Dkt. No. 122].

"In cases brought under the APA, the Court's review is confined to the administrative record." Ad Hoc Metals Coalition v. Whitman, 227 F. Supp. 2d 134, 136 (D.D.C. 2002). This is because "[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984). A court sometimes may, however, permit supplementation of the administrative record or consider extra-record evidence in reviewing agency action. See American Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008); IMS, P.C. v. Alvarez, 129 F.3d 618, 624 (D.C. Cir. 1997); American

---

[1] In the Revised ITS, the agency has explained that in the 2012 Sea Scallop BiOp it incorrectly reported 252,323 dredge hours as its "benchmark" measure, deemed to be equivalent to the annual loggerhead take limit of 161 turtles in dredge gear. NMFS now states that it has "performed additional quality control checks on the dredge hour data," and has realized that its calculation of dredge hours for the 2007 fishing year was erroneous. See Revised ITS at 11 n.6. The agency now reports that its dredge hour equivalent for 161 loggerhead takes is 359,757 hours per fishing year. Id.; see also NMFS Decision Memorandum [Dkt. No. 113-2] at 6 n.2 (same). Oceana raises no challenge to this modification.

Wild Horse Preservation Campaign v. Salazar, 859 F. Supp. 2d 33, 43 n.6 (D.D.C. 2012).[2] Resort to extra-record evidence is "the exception, not the rule." Theodore Roosevelt Conservation Partnership v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010). The D.C. Circuit has identified at least four instances where extra-record evidence may be considered: "the agency (1) acted in bad faith in reaching its decision, (2) engaged in improper behavior in reaching its decision, (3) failed to examine all relevant factors, or (4) failed to adequately explain its grounds for decision." Oceana, Inc. v. Locke, 674 F. Supp. 2d 39, 45 (D.D.C. 2009) (citing IMS, P.C. v. Alvarez, 129 F.3d at 624); see also American Wildlands v. Kempthorne, 530 F.3d at 1002 (summarizing these categories in somewhat different fashion, in reliance on James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996)).

        Oceana argues that this case presents two of the circumstances in which resort to extra-record evidence is appropriate, contending that NMFS (1) failed to adequately explain the grounds for its conclusion that a strong positive linear relationship exists between dredge hours and loggerhead takes; and (2) failed to consider all relevant factors in reaching that conclusion. Oceana Opp. to Mot. to Strike at 3. The Court agrees with the first of these arguments, and it therefore will deny NMFS' motion to strike.

---

[2]     As other judges of this Court have recognized, there is an important distinction between "supplementing" an administrative record, on the one hand, and considering "extra-record evidence," on the other. See, e.g., Oceana, Inc. v. Locke, 674 F. Supp. 2d 39, 44-45 (D.D.C. 2009); The Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior, 667 F. Supp. 2d 111, 113 (D.D.C. 2009). Dr. Weaver's declaration was not before the agency while it was developing the Revised ITS, and so it falls into the category of extra-record evidence.

II.

NMFS maintains that the Supplemental Administrative Record "contains sufficient explanation for the Court to evaluate" whether NMFS has fulfilled its obligation to clearly demonstrate the link between dredge hours and loggerhead takes. NMFS Reply [Dkt. No. 123] at 2. Citing the relevant case law, the agency emphasizes that "resort to extra-record information to determine whether an administrative record is deficient, . . . is the exception, not the rule." Id. at 3 (quoting Theodore Roosevelt Conservation Partnership v. Salazar, 616 F.3d at 514) (internal quotation mark omitted). But the rarity with which consideration of extra-record evidence occurs stems in part from the fact that challengers such as Oceana typically have the opportunity to submit such evidence in conjunction with comments on proposed agency action. That process did not occur here prior to NMFS' creation of the Supplemental Administrative Record and submission of the Revised ITS; there was no notice and comment period after remand by this Court. And Dr. Weaver's declaration features exactly the sort of commentary that parties typically submit to an agency before its action is finalized, particularly in instances that involve technical subject matter. See, e.g., Pharmaceutical Research & Mfrs. of America v. FTC, 790 F.3d 198, 211 (D.C. Cir. 2015); American Wild Horse Preservation Campaign v. Salazar, 859 F. Supp. 2d at 38. It demonstrates the value in having commenters offer informed challenges to agency action, which can help "enable judicial review to become effective." Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989).

The Court finds Dr. Weaver's declaration instructive with respect to the sufficiency of NMFS' statistical explanation of the relationship between dredge hours and loggerhead takes. The Court is not persuaded by the contentions of NMFS' counsel, who assert in conclusory fashion that "the scatter plot is not a 'model' . . . it is a graph," supposedly

5

rendering Weaver's comments inapposite. NMFS Reply at 6. While the Court agrees with the agency that if there is to be "additional explanation of the Amended ITS," it should come from NMFS' own scientists, rather than from Oceana's expert, see id. at 5 (citing Oceana, Inc. v. Locke, 674 F. Supp. 2d at 46), there is no reason to strike Dr. Weaver's declaration. Indeed, Dr. Weaver's declaration only endeavors to point out gaps in the agency's explanation and analysis; it does not purport to fill those gaps. NMFS "is prepared to file a declaration that further explains the agency's analysis and addresses Oceana's . . . argument that NMFS did not provide the necessary information for the Court to evaluate the Amended ITS." Id. The appropriate remedy is not to strike Dr. Weaver's declaration, but to permit NMFS to submit a declaration from its own expert to fill in or otherwise address the informational gaps in its explanation and analysis that Oceana has highlighted.

For the foregoing reasons, it is hereby

ORDERED that the Federal Defendants' motion to strike [Dkt. No. 119] is DENIED; it is

FURTHER ORDERED that NMFS shall file and may rely upon an expert declaration in conjunction with its reply to Oceana's response memorandum; it is

FURTHER ORDERED that the briefing schedule set forth in the Court's Minute Order of June 10, 2015, is VACATED; and it is

rendering Weaver's comments inapposite. NMFS Reply at 6. While the Court agrees with the agency that if there is to be "additional explanation of the Amended ITS," it should come from NMFS' own scientists, rather than from Oceana's expert, see id. at 5 (citing Oceana, Inc. v. Locke, 674 F. Supp. 2d at 46), there is no reason to strike Dr. Weaver's declaration. Indeed, Dr. Weaver's declaration only endeavors to point out gaps in the agency's explanation and analysis; it does not purport to fill those gaps. NMFS "is prepared to file a declaration that further explains the agency's analysis and addresses Oceana's . . . argument that NMFS did not provide the necessary information for the Court to evaluate the Amended ITS." Id. The appropriate remedy is not to strike Dr. Weaver's declaration, but to permit NMFS to submit a declaration from its own expert to fill in or otherwise address the informational gaps in its explanation and analysis that Oceana has highlighted.

For the foregoing reasons, it is hereby

ORDERED that the Federal Defendants' motion to strike [Dkt. No. 119] is DENIED; it is

FURTHER ORDERED that NMFS shall file and may rely upon an expert declaration in conjunction with its reply to Oceana's response memorandum; it is

FURTHER ORDERED that the briefing schedule set forth in the Court's Minute Order of June 10, 2015, is VACATED; and it is

FURTHER ORDERED that the parties shall meet and confer to agree upon a revised briefing schedule, as well as any needed changes to page limits, and they shall file a joint status report informing the Court of their agreement on or before September 18, 2015.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  September 4, 2015          United States District Judge